**SIGNED THIS: November 09, 2010**

_____
**THOMAS L. PERKINS
UNITED STATES CHIEF BANKRUPTCY JUDGE**

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| DANNY S. EDWARDS and | ) | Case No. 09-83881 |
| DOROTHY E. EDWARDS, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |
| NORTHWEST BANK & TRUST COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 10-08029 |
| | ) | |
| DANNY S. EDWARDS and | ) | |
| DOROTHY E. EDWARDS, | ) | |
| | ) | |
| Defendants. | ) | |

## O P I N I O N

The matter is before the Court upon the motion for summary judgment filed by Northwest Bank & Trust Company (NORTHWEST) on its complaint seeking a determination of nondischargeability of a debt resulting from a consent judgment entered

in state court proceedings on May 24, 2007, against the Debtors, Dorothy and Danny Edwards (DEBTORS).

Dorothy was the President and sole shareholder of My Type, Inc. (My Type), a corporation whose main business was acting as a distribution agent for DHL Express. Danny was an officer of the corporation and served in a management capacity. Beginning in September, 2004, and continuing through the summer of 2005, NORTHWEST made several loans to My Type, Dorothy, and/or Danny. The loans made to My Type were guaranteed by the DEBTORS. My Type encountered financial difficulties and filed a Chapter 11 petition on June 30, 2005. Attempts to reorganize proved unsuccessful and Dorothy, as a result of the stress, became unable to participate in the proceedings. The case was converted on December 27, 2006.

At some point in 2006, NORTHWEST brought an action against Danny and Dorothy, on fraud related theories. In a separate suit, NORTHWEST sought to collect on the guarantees. On May 25, 2007, the parties entered into an agreed order and judgment. The consent judgment called for the DEBTORS to make monthly payments of $1,500 on the agreed amount of the indebtedness of $226,403.42, plus accruing interest, charges and fees, and provided as follows:

> As further consideration for the Plaintiff's acceptance of such installment payment plan, Defendants agree and confirm that the indebtedness reflected herein is derivative of the amounts due and owing in the companion case of NORTHWEST BANK & TRUST COMPANY vs. DANNY S. EDWARDS and DOROTHY E. EDWARDS No. 06 L 64 which is based on fraudulent and/or negligent misrepresentations by Defendants, which Defendants agree would be established by the evidence in [that case.] Specifically, Defendants concede that Plaintiff would be able to establish that Plaintiff loaned moneys to Defendants based upon Defendants use of statements, in writing, that were materially false, respecting the Defendants' financial conditions, upon which Plaintiff reasonably relied and upon which Defendants intended

2

Plaintiff to rely. Based on the foregoing, Defendants agree that the judgment rendered herein is nondischargeable under 11 U.S.C. Section 523 in any bankruptcy proceeding either and/or both of them might file.

The DEBTORS filed a Chapter 7 petition on December 1, 2009. At the time the petition was filed, the DEBTORS had made payments of $35,000 on the judgment and the principal balance remaining under the consent order was $224,809.07, along with interest of $18,357.23 and attorney fees of $32,530.26. NORTHWEST filed an adversary complaint seeking a determination that the remaining balance was nondischargeable, based on the language of the consent decree. Alternatively, NORTHWEST alleges in its complaint that it is entitled to a determination that the debt is nondischargeable under section 523(a)(2)(B), by proving that the DEBTORS submitted false financial statements to NORTHWEST with the intent to deceive. At the pretrial conference held on July 19, 2010, the Court called the parties' attention to the Seventh Circuit's decision in *Klingman v. Levinson*, 831 F.2d 1292 (7th Cir. 1987), requesting that they address its impact on this case. NORTHWEST filed this motion for summary judgment, contending that the consent judgment should be given preclusive effect in this nondischargeability proceeding and that the consent agreement demonstrates that there are no genuine issues of material fact. In response, the DEBTORS contend that the consent judgment fails to establish sufficient facts to support the section 523(a)(2)(B) claim.

**SUMMARY JUDGMENT**

Under Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings in bankruptcy by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and

3

admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In order to prevail on a motion for summary judgment, the moving party must establish there is no genuine issue of material fact as to any essential element of the claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When a moving party has met its initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmovant to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial. Inferences to be drawn from underlying facts must be viewed in the light most favorable to parties opposing the motion. *In re Chambers*, 348 F.3d 650 (7th Cir. 2003). A material factual dispute is sufficient to prevent summary judgment only when the disputed fact is determinative of the outcome under applicable law. It is not the role of the trial court to weigh the evidence or to determine credibility, and the moving party cannot prevail if any essential element of its claim for relief requires trial. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511.

**ANALYSIS**

NORTHWEST'S motion for summary judgment is premised on the doctrine of collateral estoppel, which precludes the relitigation of issues previously determined in another proceeding before another court. *Brown v. Felsen*, 442 U.S. 127 (1979). The requirements for the application of collateral estoppel are: (1) the issue sought to be precluded must be identical to that decided in a former proceeding; (2) it must have been actually litigated in the former proceeding; (3) its determination must have been essential

to the final judgment in the former proceeding; (4) the decision in the former proceeding must be final and on the merits; and (5) the party against whom estoppel is asserted must have been fully represented in the former proceeding. *Klingman*, 831 F.2d at 1295. Because issue preclusion is an affirmative defense, the party seeking to invoke the doctrine bears the burden of satisfying each of these required elements. It is the second requirement that is at issue here.[1]

As a general rule, a parties' settlement is not generally afforded collateral estoppel effect, because the underlying issues have not been "actually litigated." *Levinson v. U.S.*, 969 F.2d 260 (7th Cir. 1992). An exception to this rule exists, however, when the parties have clearly expressed an intention that future litigation be foreclosed. *Klingman*, 831 F.2d at 1296. In the dischargeability context, such an intent is shown when the consent judgment sets forth sufficient facts to establish the elements of nondischargeability under section 523(a) of the Bankruptcy Code. A bare waiver of discharge is insufficient. For public policy reasons, the right to a discharge in bankruptcy may not be contracted away. *Klingman; In re Baumhaft*, 271 B.R. 523 (Bankr.E.D.Mich 2001). Accordingly, the stipulated facts set forth in the consent judgment must establish a prima facie case under the dischargeability section upon which NORTHWEST'S complaint is based.

Section 523(a)(2)(B) provides that a debtor may not discharge a debt for property received by:

> (B) use of a statement in writing–
>     (i) that is materially false;

---

[1] To the extent that the DEBTORS contend that the factual admissions set forth in the stipulated judgment do not match with the elements of section 523(a)(2)(B), the first requirement is called into play. In this case, the two requirements are intertwined. It is not disputed that the consent judgment is a final judgment and that the DEBTORS are the identical parties against whom preclusion is sought.

5

>>(ii) respecting the debtor's or an insider's financial condition;
>>(iii) on which the creditor to whom the debtor is liable for such money . . . reasonably relied; and
>>(iv) that the debtor caused to be made or published with intent to deceive.

11 U.S.C. § 523(a)(2)(B). In order to prevail, a creditor must prove that the debtor provided a written statement (1) that is materially false; (2) respecting his financial condition; (3) upon which the creditor reasonably relied; and (4) with the intent to deceive. *In re Cohen*, 507 F.3d 610 (7th Cir. 2007). Each of these elements must be established by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

In the consent judgment entered into by the parties in this case, the DEBTORS agreed that NORTHWEST would be able to establish that the financial statements were materially false; that the DEBTORS intended for NORTHWEST to rely on those statements; and that NORTHWEST reasonably relied on those statements. The consent judgment parrots the first three elements of section 523(a)(2)(B) and the DEBTORS do not dispute that those factual allegations are established. The only element at issue is the DEBTORS' intent to deceive.

Because direct evidence of an intent to deceive rarely exists, courts generally are required to look to the totality of the circumstances to ascertain the debtor's intent. *In re Richmond*, 429 B.R. 263 (Bankr.E.D.Ark. 2010). The intent element of section 523(a)(2)(B) does not require that the debtor acted with a "malignant heart." *In re McCarthy*, 421 B.R. 550 (Bankr.D.Colo. 2009); *In re Whisnant*, 411 B.R. 559, 570 (Bankr.E.D.Tenn. 2009). An intent to deceive may be inferred where "a person knowingly or recklessly makes a false

representation which the person knows or should know will induce another to make a loan." *In re Sheridan*, 57 F.3d 627, 633 (7th Cir. 1995).

Given the absence of a specific admission by the DEBTORS as to their intent to deceive, NORTHWEST relies upon the "logical inference" which may be drawn where the financial statement is admittedly materially false and was submitted to the lender with the intention that it be relied upon. But this Court is not yet sitting as a finder of fact and its role is not to draw inferences. Nor is this Court ruling on a typical motion for summary judgment where the Court is directed to consider the evidence in the light most favorable to the nonmoving party and draw all inferences in the nonmovant's favor. Rather, the narrow issue before the Court is whether the consent judgment is to be given collateral estoppel effect. It is only "necessary" inferences from a judgment which will be given preclusive effect. *In re Woolley*, 288 B.R. 294 (Bankr.S.D.Ga. 2001); *Gruntal & Co., Inc. v. Steinberg*, 843 F. Supp. 1 (D.N.J. 1994). Because a consent judgment is essentially a judicially approved contract, it is particularly appropriate that collateral estoppel not be extended to evidentiary inferences that are ordinarily drawn from proven facts.

As NORTHWEST acknowledges, the complaint in the former case against the DEBTORS was based upon both fraudulent misrepresentation and negligent misrepresentation. In order to establish a cause of action for fraudulent misrepresentation, the plaintiff must prove: (1) a false statement of material fact; (2) knowledge of the falsity by the party making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statements; and (5) damage to the other party resulting from such reliance. *Soules v. General Motors Corp.*, 79 Ill.2d 282, 402 N.E.2d 599 (1980). The tort of

7

negligent misrepresentation differs only in that the defendant need not know that the statement is false, but that he was negligent in ascertaining the truth of the statement.[2] *Board of Educ. of City of Chicago v. A, C and S, Inc.*, 131 Ill.2d 428, 452, 546 N.E.2d 580 (1989).

The consent judgment provides that the complaint, based on "fraudulent and/or negligent misrepresentations" would be established by the evidence. Notably, the consent judgment as prepared, provided that the complaint based on "fraudulent and negligent misrepresentations" would be established by the evidence. By handwritten insertion "/or" is added to the typewritten document following "and." Because the DEBTORS have not unequivocally stipulated that the evidence would establish fraudulent misrepresentation, but only that the evidence would establish either a claim for fraudulent misrepresentation or negligent misrepresentation, NORTHWEST argues, as it must, that even under the theory of negligent misrepresentation, the intent element would satisfy the "intent to deceive" element of section 523(a)(2)(B).[3] NORTHWEST is incorrect. Unlike a fraudulent misrepresentation, a claim for negligent misrepresentation does not involve a question of intent but is premised upon the defendant's negligent belief that the information supplied was correct. *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, --- S.W.3d ----, 2010 WL 3430449 (Mo. 2010); *Sassak v. City of Park Ridge*, 431 F. Supp.2d 810 (N.D.Ill. 2006). A claim for negligent misrepresentation does not require a showing of the defendant's knowledge of

---

[2] The Court questions whether a claim for negligent misrepresentation was proper in the first instance, given the adoption of the economic loss doctrine in *Moorman Mfg. Co. v. National Tank Co.*, 91 Ill.2d 69, 435 N.E.2d 443 (1982), which precludes the recovery of solely economic losses in tort actions. An exception to this rule exists, however, if the defendant is in the business of supplying information for the guidance of others in their business dealings. *Tyler v. Gibbons*, 368 Ill.App.3d 126, 857 N.E.2d 885 (Ill.App. 3 Dist. 2006).

[3] Where the prior judgment involves two alternate theories of liability without specifying whether it is based on one or both theories, collateral estoppel applies only to those factual findings which were essential to each theory of liability. *In re Hudson*, 428 B.R. 866 (Bankr.E.D.Ark. 2010).

the falsity of the representation or of an intent to deceive. *In re Access Cardiosystems, Inc.*, 404 B.R. 593 (Bankr.D.Mass. 2009). That level of intent is insufficient to establish a claim under section 523(a)(2)(B), which requires that the debtor intend to deceive the creditor. *See In re Sukut*, 357 B.R. 834 (Bankr.D.Colo. 2006) (judgment for negligent misrepresentation would not preclude relitigation of section 523(a)(2)(B) claim).

Although the language of the waiver of nondischargeability contained in the consent judgment is unmistakable, the DEBTORS' stipulations regarding the underlying facts do not fully satisfy the elements of section 523(a)(2)(B). This Court acknowledges that to a certain degree, application of the doctrine of collateral estoppel to consent judgments places an undue premium on draftsmanship. But the harshness of the remedy of denial of dischargeability, coupled with the fresh start policy of the Bankruptcy Code, outweigh that concern and mandate adherence to the strict construction accorded the exceptions to the dischargeability of debts. Consequently, the motion for summary judgment filed by NORTHWEST must be denied. The issue at trial will be limited to the DEBTORS' intent to deceive NORTHWEST.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###